UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOD SELOU,

        Plaintiff,                          Civil Case No. 15-10927
                                                          Honorable Linda V. Parker

v.

INTEGRITY SOLUTION SERVICES
INC., INTEGRITY ACQUISITION, LLC,
CENTRAL CREDIT SERVICES, INC., RADIUS
GLOBAL SOLUTIONS, INC., NAVIENT
SOLUTIONS, INC., and LIVEVOX, INC.

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT LIVEVOX'S MOTION
TO DISMISS THE SECOND AMENDED COMPLAINT AND DISMISSING
LIVEVOX AS A PARTY TO THIS ACTION**

        Plaintiff filed this lawsuit in a Michigan state court against Defendant Integrity Solution Services, Inc. ("Integrity") alleging violations of the federal Telephone Consumer Protection Act ("TCPA") and Fair Debt Collection Practices Act ("FCPA") and Michigan's Occupational Code and Regulation of Collection Practices Act.  Integrity removed the action to federal court based on federal question jurisdiction on March 12, 2015.  Plaintiff thereafter filed an Amended Complaint, adding five additional entities as defendants.  (ECF No. 8.)  In the Amended Complaint, Plaintiff asserts the following claims against those defendants: (I) negligent violation of the TCPA; (II) willful violation of the TCPA;

(III) violations of the FDCPA; (IV) violations of the Michigan Occupational Code ("MOC"); and (V) violations of the Michigan Collection Practices Act ("MCPA"). Defendant LiveVox, Inc. ("LiveVox") filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 30, 2015. (ECF No. 50.) Plaintiff filed a response to the motion on January 19, 2016. (ECF No. 52.) LiveVox filed a reply brief on February 2, 2016. (ECF No. 55.) Finding the facts and legal arguments sufficiently developed in the parties' pleadings, the Court is dispensing with oral argument with respect to LiveVox's motion pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court now grants the motion.

**I.     Rule 12(b)(6) Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## II.    Relevant Factual and Procedural Background

According to Plaintiff's Amended Complaint, all of the named defendants, except Defendant Navient Solutions, Inc. ("Navient") and LiveVox, are entities

3

related to Integrity.¹ (Am. Compl. ¶¶ 16-28; 61-65.) Plaintiff alleges that the Integrity-related defendants (hereafter collectively "Integrity Defendants") are "debt collector[s]," "collection agenc[ies]," or "regulated person[s]" as those terms are defined in the FDCPA, the Michigan Occupational Code, and/or the MCPA. (*Id*. ¶¶ 16, 24-25, 30-31, 40-41.) According to Plaintiff, Integrity and CCS are defined as "any person" prohibited from auto-dialing cellular phone devices under the TCPA, 47 U.S.C. § 227(b)(1)(iii). (*Id*. ¶¶ 17, 42.)

Plaintiff claims that CCS uses LiveVox's automated dialing software systems and Interactive Voice Response ("IVR") systems in CCS' debt collection efforts. (*Id*. ¶¶ 45-48, 77.) An IVR system "use[s] pre-recorded voices to guide people through various menus in a telephone communication system." (*Id*. ¶ 47.) Plaintiff alleges that "[t]he LiveVox system is an ATDS [Automated Telephone Dialing System] under the TCPA." (*Id*. ¶ 49.)

In late 2011 or early 2012, Integrity began collection activity with respect to Plaintiff's defaulted Sallie Mae student loan by calling Plaintiff's cellular phone using an ATDS. (*Id*. ¶¶ 69, 71.) "The defaulted debt [had been] assigned, transferred or sold to Navient" which services and collects student loan debts. (*Id*.

---

¹ Specifically, Plaintiff indicates that Defendant Radius Global Solutions, LLC ("Radius") is the successor of Integrity. (Am. Compl. ¶¶ 20, 61-62.) Defendant Central Credit Services, Inc. is a subsidiary of Radius. (*Id*.) Defendant Integrity Acquisitions LLC ("IA") is a Florida limited liability company located in Florida. (*Id*. ¶ 22.) IA's sole member is Radius. (*Id*. ¶ 26.)

4

¶¶ 53, 70.) While the calls temporarily ceased when Plaintiff agreed to make payments toward the debt, she claims they resumed in Spring 2014 after she stopped making those payments. (*Id*. ¶ 73.) Plaintiff claims that CSS and Integrity also called her place of employment and her parents' telephones. (*Id*. ¶¶ 78-79.) Integrity continued making the debt collection calls to Plaintiff's cellular phone numbers until July 2014, when CCS took over the collection activity. (*Id*. ¶¶ 73-75.) Plaintiff claims that she directed Integrity and CCS verbally and in writing to stop calling, but the calls did not cease. (*Id*. ¶¶ 79-81.)

### III. Applicable Law and Analysis

LiveVox seeks dismissal of Plaintiff's claims against it, arguing that LiveVox only provides technological services through which its *customers* can make phone calls and thus functions as a common carrier with no liability under the TCPA or related statutes. (ECF No. 50 at Pg ID 643.) "Even if LiveVox is not considered akin to a common carrier," it argues that Integrity or CCS made the calls at issue, not LiveVox. (*Id*.) Thus, LiveVox contends that Plaintiff's claims fail as a matter of law.

Plaintiff argues in response to LiveVox's motion that she "added LiveVox as a party directly liable for enabling the Defendants' collection calls to plaintiff through its automated telephone dialing system hardware and software platform." (ECF No. 52 at Pg ID 688.) Plaintiff spends a considerable portion of her response

5

brief citing and/or discussing several cases holding or reflecting that LiveVox's system is an ATDS. (*See id*. at 689-692.) She then maintains that "LiveVox's technology made the calls" (*id*. at 693), but appears to alternatively argue that LiveVox could be held vicariously liable for the calls made by Integrity and CCS by providing the technology that enables those entities to engage in their automated dialing collection campaigns. (*Id*. at 688-89, 693.) Plaintiff fails to address LiveVox's liability under the FDCPA, MOC, or MCPA.

As an initial matter, Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims. *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). Nevertheless, even if Plaintiff is not deemed to have abandoned her FDCPA and state law claims, the Court finds that she fails to state a claim against LiveVox upon which relief may be granted with respect to those claims.

Liability under the FDCPA is limited to debt collectors. *Waddington v. Credit Acceptance Corp.*, 76 F.3d 103, 104 (6th Cir. 1996). Plaintiff does not allege that LiveVox is a "debt collector" and LiveVox does not qualify as a "debt

6

collector" as the statute defines that term.[2]  *See* 15 U.S.C. § 1692a(6).  The Sixth Circuit has held that a company that is *not* a debt collector cannot be held vicariously liable under the FDCPA.  *Waddington*, 76 F.3d at 108.

Like the FDCPA, the MCPA and the MOC target the conduct of debt collectors.  *See Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 965-66 (E.D. Mich. 2012) (citing Mich. Comp. Laws §§ 339.901(b), 445.251(g)); *see also Gamby v. Equifax Info. Servs., LLC*, 462 F. App'x 552, 554 (6th Cir. 2012) (internal quotation marks, citations, and brackets omitted) ("Generally speaking, the [MCPA] prohibits abusive collection efforts . . ..").  Plaintiff's MCPA and MOC claims simply duplicate her claims under the FDCPA. In that case, the Michigan courts have held that the plaintiff's state law claims need not be addressed separately and fail for the same reason as the plaintiff's FDCPA claims.  *See Scheuer v. Jefferson Capital Sys., LLC*, 43 F. Supp. 3d 772 (E.D. Mich. 2014) (citing cases).

---

[2] Under the FDCPA, a "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another ... the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).

Turning to Plaintiff's TCPA claim, the statute makes it unlawful "to make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA's legislative history reflects that Congress intended the statute to "apply to the persons *initiating* the telephone call or sending the message and . . . not the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message." S. Rep. No. 102-178 (1991), 1991 WL 211220, at *9 (emphasis added). The statute defines an ATDS as "equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In her Amended Complaint and in response to LiveVox's motion to dismiss, Plaintiff alleges that LiveVox's technology, which Integrity and CSS used to call Plaintiff, is an ATDS. As previously indicated, Plaintiff cites several cases supporting this allegation, including cases directly addressing LiveVox's technology.

    Nevertheless, whether LiveVox's technology is an ATDS is not relevant to the arguments raised by LiveVox in support of its motion to dismiss. In its motion, LiveVox disputes neither that allegation nor Plaintiff's claim that CSS and

Integrity utilized LiveVox's technology when making their calls.[3] The relevant issue is whether that utilization can render LiveVox liable under the TCPA. Notably, even in the cases Plaintiff cites where LiveVox's technology was used, LiveVox was not named as a defendant and thus its liability was not addressed. *See Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217 (D. Mass. 2014) (action against debt collection agency which used LiveVox's systems); *Lardner v. Diversified Consultants, Inc.*, 17 F. Supp. 3d 1215 (S.D. Fla. 2014) (action against debt collector using LiveVox's dialing system); *Echevvaria v. Diversified Consultants, Inc.*, No. 13 CIV 4980, 2014 U.S. Dist. LEXIS 32136 (S.D.N.Y. Feb. 28, 2014) (action against debt collection agency using LiveVox system to make collection calls to debtors); Mem. Op. & Order, *Haire v. Sprint Commc'ns Co.*, No. 2:13-cv-00701 (N.D. Ala. Mar. 31, 2014) (action against creditor and debt collection agency which used LiveVox systems), ECF No. 64. Nor were the suppliers of the calling systems used in the other cases Plaintiff cites named as defendants. *See Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036 (9th Cir. 2012) (action against debt collector, only); *Swope v. Credit Mgmt., LP*, No.

---

[3] Accordingly, it is irrelevant to this Court's analysis of LiveVox's motion that another judge in this District, in an unrelated case against LiveVox and other defendants, struck as non-responsive LiveVox's answer addressing whether its technology is covered by the TCPA and whether the defendant making the calls to the plaintiff used LiveVox's technology. (*See* ECF No. 52 at 696-97, citing *Longordo v. Diversified Consultants, Inc.*, No. 15-cv-12991 (E.D. Mich. filed Aug. 24, 2015).)

12CV832, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) (same); *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06324, 2011 WL 881550 (N.D. Ill. Mar. 11, 2011) (same).

Plaintiff asserts in her response brief that LiveVox is "directly liable for *enabling* the Defendants' collection calls to plaintiff" and that "LiveVox's technology *made* the calls." (ECF No. 52 at Pg ID 688, 693, emphasis added.) What Plaintiff is claiming- as her Amended Complaint repeatedly makes clear- is that CSS and Integrity made the calls, using LiveVox's technology. (Am. Compl. ¶¶ 43, 48, 71-75, 78-87.) Case law and the rulings of the Federal Communications Commission ("FCC") demonstrate that, under the facts alleged, LiveVox is not considered the maker or initiator of the calls under the TCPA.[4] *See Davis*, 36 F. Supp. 3d at 224 (rejecting the defendant debt collector's argument that LiveVox- whose system it used to call the plaintiff- was the maker of the violating calls); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7978-7984, 2015 WL 4387780, \*\*10-14 (July 10, 2015) (indicating that entities that merely make available technology by which users may

---

[4] " 'The FCC has interpretive authority over the TCPA,' *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010), and its 'rulings shape the law in this area.' *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 551 (6th Cir. 2015)." *Baisden v. Credit Adjustments, Inc.*, No. 15-3411, -- F.3d --, Slip O. at 5 (6th Cir. Feb. 12, 2016).

make phone calls are not the makers of those calls under the TCPA and thus do not have liability under the statute).

Plaintiff appears to be alternatively arguing in her response brief that LiveVox can be held vicariously liable for the alleged TCPA violations. (*See* ECF No. 52 at 693-94.) In fact, in her Amended Complaint, Plaintiff summarily alleges that all defendants are vicariously liable for the violations of the statute. (Am. Compl. ¶¶ 117-122.) The FCC has issued a declaratory ruling advising that a company may be vicariously liable for calls sent "on its behalf."[5] *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013). Nevertheless, even if vicariously liability could attach to the entity whose involvement is limited to providing the ATDS, Plaintiff's allegations are insufficient to attach vicarious liability to LiveVox.

In its declaratory ruling in *In re Dish Network, LLC*, the FCC advised that "a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." 28 FCC Rcd. 6574, 6584, 6586, 2013 WL 1934349, at *9, 11 ("We find that vicarious seller liability under federal common

---

[5] The FCC's ruling focused on the fact that the calls, although not initiated by the entity, were made "*on behalf of* that . . . entity." *See e.g., In re Dish Network, LLC*, 28 FCC Rcd. 6574 at 6584, 2013 WL 1934349, at *9-10 (emphasis in original). As such, the agency did not specifically address whether vicarious liability could be a basis for holding a person or entity liable that neither made the call nor on whose behalf the call was made.

11

law agency principles is also available for violations of section 227(b).").  The FCC provided in further detail:

> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual) authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Other principles of agency law may support liability in particular cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."

*Id*. at 6586-87, 2013 WL 1934349, at *11 (footnotes omitted).  The mere possibility that a defendant may be vicariously liable, however, is not sufficient to state a claim for relief.  See *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that [LiveVox] is [vicariously] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556.)  While the Court must accept Plaintiff's factual allegations in her Amended Complaint as true, *Erickson*, 551 U.S. at 94, this presumption does not apply to Plaintiff's legal conclusion that LiveVox is vicariously liable for CSS' and Integrity's alleged TCPA violations.  Plaintiff's Amended Complaint is devoid of facts supporting

this legal conclusion. The facts alleged in no way suggest that LiveVox manifested assent to CSS or Integrity for CSS or Integrity to act on LiveVox's behalf and subject to LiveVox's control. Nor do the facts support the conclusion that CSS or Integrity had actual or apparent authority to act on LiveVox's behalf. The facts also do not indicate that LiveVox ratified the actions of CSS or Integrity or accepted the benefits of their actions. Plaintiff says nothing in her response brief to lead this Court to believe that she could cure this defect by amending her pleading.[6]

For these reasons, the Court also concludes that Plaintiff fails to state a viable TCPA claim against LiveVox.

Accordingly,

---

[6] LiveVox argues in its motion that it is not liable under the TCPA because it is a "common carrier." When considering the liability of a common carrier for TCPA violations, the FCC has advised that there is no liability "absent a 'high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions.' " *Rinky Dink, Inc. v. Elec. Merchant Sys.*, No. C13-1347, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015) (quoting *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779-80 (1992)); *see also In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987) (relating to a different provision of the TCPA) ("[C]ommon carriers will not generally be liable for illegal transmissions unless it can be shown that they knowingly were involved in transmitting the unlawful material."). "A 'high degree of involvement' exists where the broadcaster (1) controls the recipient lists; and/or (2) controls the content of the transmissions.' " *Rinky Dink, Inc.*, 2015 WL 778065, at *7 (quoting *Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 (2003)). Plaintiff's allegations do not support a "high degree of involvement" by LiveVox or LiveVox's actual knowledge of CSS' or Integrity's alleged unlawful activity.

**IT IS ORDERED**, that LiveVox's Motion to Dismiss the Second Amended Complaint is **GRANTED** and Plaintiff's claims against LiveVox are **DISMISSED WITH PREJUDICE**.  LiveVox is dismissed as a party to this action.

                                               s/ Linda V. Parker
                                               LINDA V. PARKER
                                               U.S. DISTRICT JUDGE

Dated: February 16, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 16, 2016, by electronic and/or U.S. First Class mail.

                                               s/ Richard Loury
                                               Case Manager